EUGENIA PÉREZ, Plaintiff and Appellant, v. MUNICIPALITY OF MAYAGÜEZ, Defendant and Appellee.

No. R-62-18.   Decided March 8, 1963.

*Eugenio Sánchez Ruiz* for appellant. *Amadeo Nazario Janer* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM.

In the petition filed by appellant in the present appeal it was alleged that the antitetanic injection administered to minor Sonia Rosado Pérez and which produced an anaphylactic shock causing her death was so administered "after making *an alleged test*"; that "at no time was plaintiff [the mother of the deceased minor] consulted on the administration of the injection, and that at no moment was she sent for in order to obtain her consent for the administration of any particular injection, nor was she asked about the history of the child as to whether she was allergic to such class of injections"; and, lastly, that the trial judge concluded that it is the practice of the Municipal Hospital of Mayagüez and of another hospital of the locality that in order to administer the injection in question a medical order is necessary after making an examination of the patient and investigating his hypersensitiveness. We issued a writ in view of the possibility that the situation of facts were different from that which we considered in *Sáez* v. *Municipality of Ponce*, 84 P.R.R. 515 (1962).

Without the benefit of the transcript of the evidence,[1] and considering only the findings of fact of the trial court and the documentary evidence attached to the original documents of the action sent up by the clerk of the Superior Court, Mayagüez Part, the contentions pointed out are not only unsupported but have been fully controverted. Regarding the

---

[1] An examination of the original record reveals that appellant also interposed a petition for appeal and in order to perfect it she moved that the transcript of evidence be done in forma pauperis. This motion was never granted. After the writ of review was issued, appellant did not designate the part of the evidence desired to be transcribed. Rule 54.3 of the Rules of Civil Procedure of 1958.

fact that the proper test was made on the minor in order to determine a possible condition of hypersensitiveness, from the report of the autopsy it appears that the body of the unfortunate child presented signs of punctures on the precubital region of the left arm—the test—and on the right arm—the administration of the injection; and the testimonies given by nurse María O. Torres and Gudelia Pérez Rosado, minor Sonia's sister, which form part of the report of the investigation conducted by District Attorney Alemañy, are conclusive as to the fact that the test was made and that they waited 20 minutes before administering the fatal dosis, if the result was negative. Regarding the lack of the mother's consent, such fact could perhaps be inferred, but it would not be decisive because she was not present and the minor was accompanied by an older sister to receive proper emergency treatment, which undoubtedly called for the administration of the antitetanic, as it appears from the literature on the product which was presented in evidence by appellant herself. There is also evidence to the effect that the nurse made inquiry on the history of the girl's allergic reactions. Lastly, with respect to the prevailing local practice, although the trial judge made the statement pointed out by appellant, it is no less true that he added immediately that, "however, it is a common practice in these two hospitals that allergic tests for the administration of these injections be made by physician aides and nurses, without previous orders of the physicians." [2]

It is not necessary to elaborate further to conclude that the present case is governed by the doctrine announced in *Sáez*, and, therefore, that the appellee court did not err in dismissing the complaint.

The judgment rendered by the Superior Court, Mayagüez Part, on January 10, 1962 will be affirmed.

---

[2] It was also the practice to refer the case to a physician if the result of the test was positive, but if it was negative, the nurse was authorized to administer the injection.